UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
**CHRISTINE CARR,**                     )
                                        )
      **Plaintiff,**    )
                                        )   Civil No.
      v.                )   15-11483-FDS
                                        )
**ROBERT A. McDONALD,**                 )
                                        )
      **Defendant.**    )
_____)


MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action alleging unlawful employment discrimination, harassment, and retaliation on the basis of religion. Plaintiff Christine Carr, a former medical support assistant at the Veterans Affairs Medical Center in West Roxbury, Massachusetts, has filed suit against her former employer, alleging various forms of religious harassment and discrimination, as well as retaliation for her complaints regarding that harassment. She is proceeding *pro se*.

Defendant Robert McDonald, Secretary of Veterans Affairs, has moved for summary judgment as to all claims. For the reasons described below, that motion will be granted.

**I.      Factual Background**

Christine Carr was hired in 2010 as a Medical Support Assistant at the VA Medical Center in West Roxbury, Massachusetts. (Wichers Decl. Ex. C). Prior to her hiring as a medical support assistant, Carr had been employed at the center as a food service worker from 2003-2010. (Wichers Decl. Ex. B). Carr is Catholic. (Wichers Decl. Ex. F).

A. **Carr's Work History**

There is no dispute that Carr did not have a good working relationship with many of her coworkers or supervisors. Numerous colleagues and supervisors complained about her behavior. (*See* Def. SMF ¶¶ 8-15). Coworkers complained that Carr refused to do her work, refused to be trained, was rude and dismissive to patients, and sent lengthy and defensive emails that disparaged others. (*Id.*). The record reflects that during her employment as a medical support assistant, Carr had four different direct supervisors, a second-line supervisor, and three different third-line supervisors. (Wichers Decl. Exs. F-I). Of those supervisors, six were also Catholic, including three of her four direct supervisors. (Wichers Decl. Exs. F, J-M). One of Carr's supervisors, Alex Paganucci, testified that Carr was "completely unmanageable." (Wichers Decl. Ex. J). At least three other supervisors gave similarly negative testimony concerning Carr's work performance. (*See* Wichers Decl. Ex. G, H, K).

The record also contains evidence that Carr was on the receiving end of numerous disciplinary actions. In 2012, she received an admonishment in March; a letter of counseling in May; and a second admonishment in September. (Morall Decl. Exs. D, E; Wichers Decl. Ex. Q). The May 2012 incident led to a mediation between the VA and Carr's union representatives from the National Association of Government Employees. (Wichers Decl. Ex. P). Following mediation, the VA agreed to remove the letter of counseling from Carr's record and to provide her with additional job-related training. (*Id.*).[1]

On December 19, 2012, five days after the shooting massacre at Sandy Hook Elementary School in Newtown, Connecticut, Carr sent her supervisor an e-mail stating: "1ST MARINE

---

[1] Although Carr appears to contend that the mediation was resolved in her favor and should therefore have preclusive effect over this litigation, a review of the counseling letter and the mediation agreement show that the mediation did not cover any issues of discrimination or retaliation that Carr has raised here.

CORP. GUADAL CANAL SNIPER SCOUT'S DAUGHTERS DON'T RUN . . . laugh together all you want . . . ." (Bediako Decl. Ex. A). She was placed on paid administrative leave while management and the VA police investigated the incident. (Wichers Decl. Exs. F, R).

In February 2013, Carr received a three-day suspension for the e-mail incident, another letter of counseling in April, and a fourteen-day suspension in May. (Wichers Decl. Exs. T-V). In October 2013, supervisor Chris Powers recommended that she be terminated, but the human resources department downgraded the discipline to a second fourteen-day suspension. (Wichers Decl. Ex. H).

In February 2014, Carr was placed on paid administrative absence pending an investigation into an allegation that she had e-mailed the VA's Office of Resolution Management confidential personal and medical information for hundreds of veterans (purportedly in support of a 2013 administrative complaint of discrimination). (Ritter Decl. Exs. A, B). When management escorted Carr to her lockers for cleanout before the paid leave began, they discovered printouts of all the confidential records. (Wichers Decl. Ex. FF).

In April 2014, the VA gave Carr a notice of proposed removal, which became final in June 2014. Def. SMF ¶¶ 38, 42. The four charges listed in the notice were (1) improper retention of veterans' records; (2) failure to safeguard confidential matter or access to such; (3) failure to discharge duties conscientiously and effectively, based on (a) an incident when Carr went to lunch instead of assisting a disabled veteran, and (b) three incidents when Carr failed to process all of the Interfacility Consults ("IFCs") assigned to her; and (4) unreasonable delay in carrying out instructions, based on a month-and-a-half delay in Carr's compliance with repeated directives to submit official requests for prior absences. (Wichers Decl. Ex. HH).

Carr's employment was terminated effective June 18, 2014. (Wichers Decl. Ex. LL).

### B. Carr's Equal Employment Opportunity Complaints

The record indicates that Carr first visited an Equal Employment Opportunity counselor in December 2012. The counselor was unable to resolve Carr's complaints and, although the VA initially agreed to mediate the dispute, no mediation was ever scheduled. (Wichers Decl. Ex. MM). On March 28, 2013, Carr filed the first of two formal EEO complaints with the VA. (Wichers Decl. Ex. II). She submitted an amendment to her complaints on November 14, 2013. (Wichers Decl. Ex. JJ). She identified 39 separate incidents that she alleged constituted religious harassment, discrimination, and retaliation for her initial meeting with the EEO counselor. (Wichers Decl. Ex. NN).[2]

Carr's second complaint, which she submitted on May 21, 2014, alleged that her April 2014 notice of proposed removal was based on her religion and was also retaliation for her prior EEO contacts. (*Id.*). On January 30, 2015, the VA's Office of Employment Discrimination Complaint Adjudication issued a Final Agency Decision, finding no merit to any of Carr's claims. (*Id.*).

## II. Procedural History

Carr filed the present action on March 31, 2015, asserting multiple claims against Secretary of Veterans Affairs Robert McDonald and ten other individual defendants.[3] On August 11, 2015, the Court dismissed all claims against all defendants, with the exception of the claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, against Secretary McDonald. The Secretary has now moved for summary judgment on those claims.

---

[2] The specifics of each of the 39 incidents are detailed at length in defendant's statement of material facts and are discussed further in this memorandum and order only where necessary or relevant to this decision.

[3] Carr also filed an "amended complaint," which she intended to supplement, rather than supersede, the original complaint. *See* Am. Compl. at 4.

### III.   Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

### IV.   Religious Harassment

It is difficult to isolate or identify the specific incidents on which Carr bases her claims. In her prior administrative proceedings, Carr identified 39 separate incidents that she alleged constituted harassment, discrimination, or retaliation (or all three). Because Carr may not now assert new allegations that were not raised in those administrative proceedings, *see Thornton v. UPS, Inc.*, 587 F.3d 27, 31 (1st Cir. 2009), the Court will assume that Carr intends to incorporate

all 39 incidents in this action.

A plaintiff alleging a claim for workplace harassment based on religion must show that:

(1) she is a member of a protected class; (2) she was subject to uninvited harassment; (3) the offending conduct was *because of her religion;* (4) the harassment was severe and pervasive; (5) the offending conduct was both objectively and subjectively offensive and (where employer liability is sought); (6) there was a basis for such liability.

*Rivera v. Puerto Rico Aqueduct & Sewers Auth.*, 331 F.3d 183, 189 (1st Cir. 2003). In *Rivera*, the First Circuit was careful to highlight the difference between "an environment that is offensive to a person of strong religious sensibilities and an environment that is offensive because of hostility to the religion guiding those sensibilities." *Id.* at 190.

A review of the record concerning the 39 incidents indicates that only two involve any plausible connection to Carr's religion. The first such incident occurred in 2013. According to the undisputed evidence, Carr's supervisor, Alex Paganucci, required all his staff to request annual leave by (1) entering a request in the computer at least a week in advance and (2) letting him know about the request. Def. SMF ¶ 80. Two days before Good Friday, Carr entered a request in the computer to take that day off, but did not notify Paganucci. On the morning of Good Friday she called in sick for four hours. Later that day she called back and reported that she would be out all afternoon as well, because she had requested the entire day off. Paganucci—who is Catholic—told Carr that he did not know about her request and was going to deny it. Carr took the entire day off anyway. She then complained to other management officials, who approved her request. *Id.*

The second incident occurred when a co-worker allegedly ripped up a picture of Jesus that Carr had placed on her desk. Def. SMF ¶ 55. That co-worker, however, was not a supervisor or manager. Under Title VII, an employer may be held liable for a non-supervisor's conduct only where the plaintiff can show "that the employer knew or should have known about

6

the harassment, yet failed to take prompt action to stop it." *Noviello v. City of Boston*, 398 F.3d 76, 95 (1st Cir. 2005). Carr did not report that incident to management at the time, and there is no evidence that management was aware of the action at the time. (Carr Dep. 53-54). Accordingly, Carr may not now seek to hold her employer liable for failing to take proper action in response. Defendant's motion to for summary judgment on Carr's claim for workplace harassment will therefore be granted.

V.      **Retaliatory Harassment and Termination**

Carr also alleges that the harassment she experienced and the termination of her employment were in retaliation for her contacts with an EEO counselor in December 2012. Title VII makes it an unlawful act for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a). Where direct evidence of retaliation is lacking, retaliation claims are evaluated using the three-stage burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g.*, *Mariani-Colon v. Department of Homeland Sec.*, 511 F.3d 216, 223 (1st Cir. 2007).

In order to establish a *prima facie* case of retaliation, a plaintiff must establish three elements: (1) that the plaintiff engaged in a protected activity; (2) that the plaintiff suffered a materially adverse action, causing him harm either inside or outside of the workplace; and (3) that the adverse action was causally linked to her protected activity. *See id.* (citing *Dixon v. International Bhd. of Police Officers*, 504 F.3d 73, 81 & n. 4 (1st Cir. 2007)). If the plaintiff makes this showing, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decisions and conduct. *See McDonough v. City of Quincy*, 452 F.3d 8, 17 (1st Cir. 2006). If the defendant presents such a reason, the plaintiff must

demonstrate that the defendant's proffered reason is pretext masking illegal retaliation. *See id.*

For the purposes of this motion, the Court assumes that Carr has established a *prima facie* case of retaliation with respect to the 22 incidents that occurred *after* her first EEO complaint.[4] Even so, defendant has provided numerous legitimate, non-retaliatory reasons for its actions, and the Court is unable to discern in Carr's submissions any evidence that those reasons were mere "pretext" for retaliation.[5] Indeed, the evidence of pretext or retaliatory animus with respect to the alleged harassment and her termination is essentially non-existent.

The overwhelming weight of the record evidence indicates that the VA's stated reason for firing Carr was, in fact, the actual reason behind her firing. "For a plaintiff to 'impugn the veracity' of the employer's proffered reason is insufficient; instead, a plaintiff must proffer specific facts that would enable a reasonable factfinder to conclude that the employer's reason for termination was a 'sham' intended to cover up the employer's true motive." *Ponte v. Steelcase Inc.*, 741 F.3d 310, 323 (1st Cir. 2014) (quoting *Mesnick*, 950 F.2d 816, 824 (1st Cir. 1991)). Defendant's motion for summary judgment will therefore be granted as to Carr's claim for retaliatory harassment and termination.

## VI.     Unequal Pay Based on Religion

The same burden-shifting framework applies to Carr's claim that she received unequal pay based on her religion. To make out a *prima facie* case of religious discrimination in compensation under Title VII, "[a plaintiff] must show that (1) he is a member of a protected class; (2) he met his employer's expectations; (3) he suffered adverse employment action with

---

[4] Because the other incidents occurred *before* Carr first contacted an EEO counselor, those incidents could not have constituted retaliation for any protected activity.

[5] As defendant notes, "Carr's history of . . . antagonism toward coworkers and supervisors is powerful evidence that none of the twenty-two incidents bore any connection to her contact with an EEO counselor." Def. Mem. 16.

respect to compensation; and (4) similarly-situated employees outside the protected class received more favorable treatment." *Prescott v. Higgins*, 538 F.3d 32, 41 (1st Cir. 2008).

Carr testified that a number of co-workers were hired at a higher grade than her, even though she alleges she had more training and experience. (Carr Dep. at 208). However, Carr has not specifically identified any similarly-situated non-Catholic employees who were paid more than her. "[A] plaintiff cannot defeat summary judgment by relying on 'conclusory allegations, or rank speculation.'" *Mariani-Colon*, 511 F.3d at 224 (1st Cir. 2007) (quoting *Fontánez–Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 55 (1st Cir. 2006)). As a result, Carr has not made out a *prima facie* case of unequal pay under Title VII and defendant's motion to dismiss that claim will therefore be granted. *See id.* at 42.

### VII. Discriminatory Termination Based on Religion

A plaintiff claiming unlawful termination based on discrimination must first establish a *prima facie* case of discrimination. *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001). Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer articulates such a reason, the burden shifts back to the plaintiff to show that the proffered reason was mere pretext, and that the true reason was unlawful discrimination. *Id.* at 34. Thus, "[a]t the summary judgment stage, the plaintiff must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was . . . discrimination." *Quinones v. Buick*, 436 F.3d 284, 289-90 (1st Cir. 2006) (quotation and internal citation omitted).

Defendant does not appear to contest that Carr has made out a *prima facie* case. *See* Def. Mem. 19. And, as noted, the record contains ample evidence of legitimate, non-discriminatory

reasons for Carr's termination.  Thus, in order to survive summary judgment, Carr must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive:  [ ] discrimination." *Soto-Feliciano v. Villa Confresi Hotels, Inc.*, 779 F.3d 19, 25 (1st Cir. 2015) (quoting *Mesnick*, 950 F.2d at 824); *cf. Velez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 452 (1st Cir. 2009) (rational jury must be able to conclude that unlawful age discrimination was the "actual, but-for cause" of the discrimination); *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir. 1990) (the plaintiff must show "colorable evidence to show that the reasons, if pretextual, were pretexts *for age discrimination*") (emphasis in original).

Carr has not done so here.  Although she has submitted thousands of pages of documents into the record, the Court is unable to find any record evidence supporting her claim that she was fired because of her religion.  In contrast, defendant has presented substantial uncontested evidence that the VA had valid, non-discriminatory reasons for terminating her employment.  Defendant's motion for summary judgment as to Carr's claim for wrongful termination will therefore be granted.

### VIII. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  May 26, 2016                                         United States District Judge